cda
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6192-CR-HURLEY\VITUNAC

UNITED STATES OF AMERICA,

　　Plaintiff,

v.

ALFRED FISER,

　　Defendant.
_____/



## NOTICE OF FILING

The defendant, Alfred Fiser, through counsel, hereby gives notice of the filing of a letter from his employer, G & H Parker Construction, Inc., dated November 28, 2003, and a psychological report dated December 18, 2003.

　　　　　　　　　　　　　　KATHLEEN M. WILLIAMS
　　　　　　　　　　　　　　FEDERAL PUBLIC DEFENDER

　　　　　　　　　　By: /s/ Lori Barrist
　　　　　　　　　　　　Lori Barrist
　　　　　　　　　　　　 Assistant
　　　　　　　　　　　　Federal Public Defender
　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　Florida Bar No. 374504
　　　　　　　　　　　　400 Australian Ave., Suite 300
　　　　　　　　　　　　West Palm Beach, Florida 33401
　　　　　　　　　　　　Telephone: (561) 833-6288
　　　　　　　　　　　　Fax:(561) 833-0368

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered this 30th day of December, 2003 to the Assistant United States Attorney Tom Lanigan, 500 East Broward Blvd, 7th Floor, Ft Lauderdale, FL 33301; and to United States Probation Officer Terry Graves, c/o 701 Clematis Street, West Palm Beach, FL 33401; and to Alfred Fiser, c/o of the Palm Beach County Jail.

_____
Lori Barrist



**G & H PARKER CONSTRUCTION, INC.**
1401 WEST 7TH STREET
RIVIERA BEACH, FLORIDA 33404
PHONE: (561) 863-9964   FAX: (561) 863-0804

Nov. 28, 2003

Federal Court
400 Australian Ave.
Suite 300
West Palm Beach, Fl.

Re: Al Fiser

To Whomsoever Concern:

My husband and I have known Al Fiser for many years. Al have work for my husband off and on thur the years. Al started back working for my husband durning a good job. Getting jobs and working with co-workers. We would gladly hire him again.

Yours Truly
Nattie Parker.



The INSTITUTE
for Behavioral Sciences
and the Law

Office (954) 766-8826  
Fax   (954) 764-3486

200 Southeast 6th St. Suite 601  
Fort Lauderdale, Fl. 33301

12-18-03

Ms. Lori Barrist  
400 Australian Avenue North Suite 300  
West Palm Beach, FL 33401-5040

Case reference:   United States of America v. Alfred Fiser  
Case #:           00-6192-CR-Hurley

**Forensic Summary:** Mr. Alfred Fiser was determined to be suffering from a major mental disorder (Major Depressive Disorder) that is separate and apart from a substance abuse disorder. In addition, he reported the chronic and severe abuse of both alcohol and cocaine. As a result, the defendant meets the diagnostic criteria for a Dual Diagnosis Disorder (concurrent mental health and substance abuse diagnoses).

Dear Ms. Barrist:

The above referenced defendant was evaluated at your request for a psychological evaluation. He was evaluated on 12-13-03 in the West Palm Beach County Jail in West Palm Beach, Florida. Mr. Fiser is currently charged with Violation of Probation due to several positive urinalysis tests and not returning to his court mandated treatment program (C.A.R.P.). In order to conduct this evaluation, the following sources of forensic data were utilized: Clinical Interview, Mental Status Examination, Minnesota Multiphasic Personality Inventory – Second Edition (MMPI-2), Report and Recommendation for Final Violation of Supervised Release Hearing, Petition for Warrant or Summons for Offender Under Supervision, Presentence Investigation Report, Clarification to Presentence Report, letter written by Ms. Millie Fiser (sister) to Judge Hurley (12-05-00), letter written by Mr. Gary Reed (friend), medical records from St. Mary's Hospital (11-02-03), collateral telephone interview with Mr. Thomas Fiser (brother).

The following historical information was provided solely by the defendant only and is therefore uncorroborated and subject to distortions. Mr. Fiser is a 60 year-old (D.O.B. – 09/01/43), divorced, white male who was born in Morilton, Arkansas. His mother and father raised him throughout childhood and adolescence. He reported both of his parents to be deceased. He denied he was ever abused or neglected during his formative years. He denied he ever observed domestic violence in his home. The defendant is the oldest sibling in a family of two brothers and seven sisters. He reported he maintains contact with "some" of his siblings. Mr. Fiser reported his brother and two of his sisters suffer from substance abuse. He was not aware of any mental health history in his family. The defendant reported he has been married and divorced on one occasion and he is the father of four children. Mr. Fiser reported he maintains contact with all of his children.

1

Academically, the defendant reported he completed high school and one year of college. He reported he was a good student and he denied any major behavioral problems in school. He served three years in the United States Army and he received an Honorable Discharge. Occupationally, the defendant reported his last job to be a "project manager for a construction company." He further reported he has been similarly employed in that line of work since 1971. Mr. Fiser reported he has worked long hours for his entire life as he "enjoys working and getting things down." Moreover, he stated that he becomes "frustrated" when others do not "want to work or want to sleep all day instead of getting up and doing something productive." He denied he has ever received Social Security benefits for a mental or physical disability. Mr. Fiser reported he has been arrested in the past on numerous charges including Bank Robbery, Driving While License Suspended, Failure to Redeliver a Rented Vehicle and a multitude of traffic tickets ("I just had trouble following the speed limit when they changed it to 55"). He has been incarcerated in prison on one occasion due to a conviction on the above-noted Bank Robbery charge.

In regards to his mental health history, the defendant reported he was psychiatrically hospitalized in 1999 for 30 days at the Missouri State Hospital. He further explained he began to cry uncontrollably at that time while listening to "blues records." He was taken to the hospital by family members and he was prescribed anti-depressant medication (Prozac) at that time. His next contact with the mental health system was in November of the current year (2003) at St. Mary's Hospital. The defendant explained he had relapsed on drugs and that he "got scared" and did not return to a court-mandated program (C.A.R.P). He telephoned the program and he was informed he would be terminated from that facility for elopement. Mr. Fiser reported he decided to "take his life" at that point and he proceeded to take an overdose of blood pressure medication as well as "hooking up a hose from my exhaust pipe inside my car." He was subsequently found after he spoke to two residents in C.A.R.P. by cellular telephone. The defendant was involuntary hospitalized at St. Mary's Hospital for five days and he was prescribed anti-depressant medication (Lexapro). He was not prescribed any form of psychotropic medication at the time of this assessment.

Mr. Fiser reported his depression to have started later in life, although he was not able to identify a particular incident that "triggered" that emotional state. The defendant reported he has attempted to commit suicide on three occasions, twice in Missouri in 1999, and once as described above (November, 2003). He indicated he continues to experience intermittent ideations of self-harm. He further reported his "best friend" (Dave) to have committed suicide in 1992. He was quite depressed over the loss of his best friend and he continues to think about him at times. He reported his reasons for not committing suicide as, "my good health, my children and my work." Mr. Fiser reported "feeling alone" since 1990 due to his advancing age (60) and the absence of significant others or an adequate support group. He denied periods of mania or anxiety. He denied he has ever experienced auditory or visual hallucinations.

The defendant reported he has abused alcohol since he was age 18. His alcohol problems began while he was enrolled in the United States Army. His abuse of alcohol increased to a daily rate at the age of 21. He continued to abuse alcohol on a daily basis for most of his adult life. He experimented with a variety of drugs (cocaine, LSD, marijuana, amphetamines, barbiturates) in the 1970's, although he denied any problems with those substances. He began to abuse "crack" in 1989, and his use of that substance was mostly on an intermittent basis ("bingeing"). He

2

denied that his abuse of substances was ever a problem on the job, in school or in the military. However, he reported his abuse of substances directly resulted in his divorce, periods of estrangement from his children and poor financial decisions. Mr. Fiser has participated in substance rehabilitation services on one occasion at C.A.R.P. His participation in that program was court mandated upon his release from prison in 2003. He completed the residential phase of that program ("I was a peer leader for five of the eight weeks that I was there") and he entered into the halfway house program. He was a resident for two months at that program prior to his relapse and current legal charges.

In a collateral telephone conversation, Mr. Thomas Fiser (brother) reported his brother to have a severe alcohol problem for his entire adult life. In addition, he reported his brother has abused cocaine for the past twenty years. Mr. Thomas Fiser indicated his brother has received court-ordered treatment at a halfway house on one occasion for his substance abuse. The defendant was also reported to suffer from chronic depression and he has attempted to commit suicide on more than one occasion. He has also been psychiatrically hospitalized on two occasions due to his severe depression. The defendant was not reported to be violent or threatening most of the time, however; he has become "loud" and "defiant" when he is abusing alcohol.

A Mental Status Examination was conducted for this assessment in order to provide additional clinical information. The defendant was appropriately groomed and he was attired in the standard uniform of inmates at this facility. He was of average height and weight and he appeared to be his stated age. His hair was grey and he wore eyeglasses. He did not display any bizarre or unusual behaviors and his motoric responses were within normal limits. His mood was mostly depressed as he cried throughout the assessment. Eye contact was direct and unremarkable. His initial presentation was one of cooperation and his demeanor was serious. Rapport was sufficiently established for the purpose of this assessment. The defendant was informed of the purpose of the present evaluation and to the possible limits of its confidentiality and he agreed to participate in the interview. He was oriented to time, place, person, and situation. Thought processes were organized, concrete and rational. Cognitive processing speed was average. Speech patterns were appropriate in volume, pacing, content, and word production. He denied suicidal ideations or plans. Attention span was within normal limits. Memory functions were intact on brief measures of those cognitive skills. The defendant did not appear to be attending to imaginary, internal stimuli at any time. In addition, he did verbalize any statements that would be consistent with an active delusional belief system. He remained rational and lucid during this assessment, however; he displayed and reported numerous symptoms that are strongly suggestive of the presence of a major mood disorder.

**Psychological Test Results:** The MMPI-2 is the most frequently administered personality test in forensic settings due to its multiple validity and clinical scales. The defendant's MMPI-2 did not display any significant elevations on validity test scales designed to assess for exaggerated, minimized or random response patterns. Clinical scales on the MMPI-2 revealed a pattern of test scores and elevations that are suggestive of someone in severe psychological distress. The defendant is presenting with a mixed pattern of psychological symptoms. Individuals who score in a similar manner are known to feel upset, tense, nervous, anxious, and agitated. Results are highly suggestive of a person that may act in aggressive ways and tend to be rebellious toward authority figures. They often have stormy relationships with families, and family members tend to be blamed for personal difficulties. The defendant may experience periods of alternating increased activity and fatigue. He is prone to report feeling depressed and may feel hopeless and

3

pessimistic about the future in general. The defendant's test scores parallel those of persons who often receive depressive diagnoses and typically have a history of periods of serious depression. Individuals with similar test profiles often consider self-harm or engage in active suicide attempts. There are also strong indications that this individual tends to ruminate excessively about his self-worth and most likely uses excessive alcohol as an escape from stress and pressure. MMPI-2 substance abuse scales were elevated in the significant range, apparently corroborating the defendant's self-report in that area. The defendant is experiencing tremendous personal distress and may be motivated to seek help for his problems at this time because he is concerned about his poor functioning.

Based upon the above clinical and forensic information, it is my opinion that the defendant meets the criteria for the following DSM-IV-TR diagnoses:

    Axis I:     Major Depressive Disorder
                Cocaine Dependence
                Alcohol Dependence
    Axis II:    diagnosis deferred
    Axis III:   high blood pressure
    Axis IV:    legal
    Axis V:     55

In regards to the current allegations of probation violation, the defendant reported he began to occasionally drink alcohol on the job while enrolled at C.A.R.P. He further reported that on the day of his arrest, he was upset that employees did not want to work on a Saturday. He began to consume alcohol and he cashed a $500.00 check from his employer. He then proceeded to a former source for "crack" cocaine, leading to the current violation. He had smoked crack on one other occasion on a Saturday 2 weeks prior to this incident. He reported feeling frustrated on both occasions he abused "crack." He also spoke to his son about going out with him but he didn't return his telephone call. This incident occurred on the morning of the incident. Mr. Fiser indicated he "felt really bad and irritable" on the date of the incident that led to his eventual arrest.

In summary, the defendant was determined to be suffering from a major mental disorder at this time. In addition, he reported the chronic and severe abuse of alcohol and cocaine. As a result, the defendant meets the diagnostic criteria for a Dual Diagnosis Disorder (concurrent mental health and substance abuse problems). If the defendant were to receive treatment as a condition of his legal sentence, he would likely require the prescription of anti-depressant medication, ongoing individual counseling and substance rehabilitation services.

Thank-you for the opportunity to evaluate this interesting individual and please feel free to telephone me if you require additional information on this matter.

Truly yours,

Michael P. Brannon, Psy.D.
Licensed Psychologist / PY0004289

4